**Gail DERR, Plaintiff-Appellee,**

v.

**GULF OIL CORPORATION, Defendant-Appellant.**

Nos. 85–1056, 85–2341.

United States Court of Appeals, Tenth Circuit.

June 25, 1986.

Richard J. Remley (William G. Duck with him on briefs), Houston, Tex., for defendant-appellant.

John R. Olsen, Boulder, Colo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Gail Derr filed an action against her employer, Gulf Oil Corporation, alleging, among other claims, that Gulf discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The trial court found that Gulf discriminated against Ms. Derr when it demoted her from an associate lease analyst position to an accounting clerk position. The court entered a judgment against Gulf from which the company appeals.

Gulf hired Ms. Derr as a clerk floater in the accounting department of Gulf Mineral Resources Company (GMRC), a division of Gulf Oil Corporation. Ms. Derr was later promoted to associate lease analyst in GMRC's lease records unit where she worked with three male lease analysts. Subsequently, as GMRC's business declined, Mr. Dale Lyon, GMRC's assistant comptroller, removed Ms. Derr from the lease records unit and assigned her to the accounting clerk position. Dissatisfied with her demotion, Ms. Derr resigned.

Gulf first contends that the trial court's finding that Gulf discriminated against Ms. Derr when it transferred her to the accounting clerk position is clearly erroneous. We conclude there is ample evidence from which the trial court could conclude that Ms. Derr's sex was a determinative factor in Gulf's decision to demote her. As an associate lease analyst, Ms. Derr was in a career ladder position, a few months away from becoming a lease analyst. She was doing better than satisfactory work and was being groomed by her supervisor to become a lease analyst. Gulf knew that an opening for Ms. Derr's promotion to lease analyst would occur very soon because two lease analysts were nearing retirement age, and one of them had indicated that he wanted to take advantage of Gulf's early retirement program. In deciding to demote Ms. Derr, Mr. Lyon did not consult Ms. Derr's immediate supervisor even though Mr. Lyon knew little about the duties and workload of the lease records unit. Instead he consulted only Mr. A.C. Weiler, the manager of accounting. The evidence shows that Mr. Weiler was biased against Ms. Derr because of her sex. For example, Mr. Weiler scolded Ms. Derr for attempting to achieve her career

goals while having two small children at home. He also commented repeatedly that problems arise if a woman gets too much education. Additionally he was antagonistic toward Ms. Derr after she was demoted and refused to acknowledge her presence.

The evidence also shows that Mr. Lyon chose Ms. Derr for demotion without considering any other Gulf employee for the accounting clerk position. At least one other Gulf employee was not only interested in the accounting clerk job but, unlike Ms. Derr, was also trained for the job. Also, unlike Ms. Derr, the other employee was not very busy with her work at Gulf.

Finally, the following juggling of employees occurred all within a few months: Ms. Derr replaced a Mr. Whittaker, at a lower salary; Mr. Whittaker was transferred into a Mr. Villamor's department; and Mr. Villamor was transferred into the lease records unit, the unit from which Ms. Derr had been removed. Although varying inferences may be drawn from this evidence, the record clearly supports the judgment.

Gulf next contends the trial court erred when it ordered Gulf to reinstate Ms. Derr and awarded her back pay of $7,980 plus interest. These remedies, Gulf argues, are not available to Ms. Derr because she was not constructively discharged. Gulf's contentions require us to examine the basis for the trial court's award to Ms. Derr and the law of constructive discharge.

Ms. Derr resigned from Gulf on November 30, 1982. Apparently, the demotion to accounting clerk would not have made a difference in her salary until March 1, 1983, at which time, absent the discriminatory demotion, she would have been promoted to lease analyst. Thus, the trial court calculated damages for the period from March 1, 1983, to February 1, 1985,

the date reinstatement was to take effect. The court determined that Ms. Derr's damages were the difference between what she would have earned as a lease analyst and what she would have earned had she remained in the accounting clerk position. Thus, all of the damages awarded relate to the period of time after Ms. Derr resigned but before she was to be reinstated.[1]

■ We agree with Gulf that the remedies of back pay and reinstatement are not available to Ms. Derr unless she was constructively discharged. In *Muller v. United States Steel Corp.*, 509 F.2d 923 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975), we reversed the trial court's holding that an employee had been constructively discharged and then examined the effect of our conclusion on the trial court's damage award. We stated:

Unless [the employee] was constructively discharged, he would not be entitled to back pay, interest and retirement from the date of [his resignation]. His damage would be measured by the difference between actual pay and the amount he would have made [had he not been discriminated against] until he quit....

*Id.* at 930. Our conclusion in *Muller* is in harmony with the law in other jurisdictions. *See, e.g., Satterwhite v. Smith*, 744 F.2d 1380, 1381 n. 1 (9th Cir.1984) ("an employee who quits cannot secure back pay unless his employer constructively discharged him."); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 66 & n. 8 (5th Cir.1980); *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192, 197 (6th Cir.1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979). We agree with the Fifth Circuit's statement in *Bourque, supra*, that "society and the policies underlying Title VII will be best served if, wherever possible, unlawful dis-

1. The record indicates that the trial court calculated the back pay damages as follows: As a lease analyst, from March 1, 1983, through February 29, 1984, Ms. Derr would have earned $1650 per month, or $19,800. From March 1, 1984, through January 31, 1985, she would have earned $1774 per month, or $19,514. Thus, Ms. Derr would have earned $39,314 as a lease ana-

lyst. As an accounting clerk, she would have earned $1315 per month, or $15,780 for the first 12 months, and $1414 per month, or $15,554 for the next 11 months, amounting to a total of $31,334 Ms. Derr would have earned as an accounting clerk. The difference in salary is $7,980. The court awarded Ms. Derr this amount plus interest.

crimination is attacked within the context of existing employment relationships." 617 F.2d at 66.

■ Applying this rationale to the present case, we conclude that unless Ms. Derr was constructively discharged, she is entitled to only the difference in pay between what she earned as an accounting clerk and what she would have earned as an associate lease analyst until she resigned. That difference is, according to the record, zero.[2]

In addition, Ms. Derr is not entitled to reinstatement if she was not constructively discharged. *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 175 (10th Cir.1982); *Dean v. Civiletti*, 670 F.2d 99, 101 (8th Cir.1982) (per curiam); *Fancher v. Nimmo*, 549 F.Supp. 1324, 1333 (E.D.Ark.1982).

In response to Gulf's contention that Ms. Derr was not entitled to back pay and reinstatement because she was not constructively discharged, the trial court stated:

[W]here the court has found discrimination in demoting her, changing her to another job, and the court has allowed a setoff or a deduction on what she would have made had she stayed with the company, *even though she was not constructively fired,* even though she was not forced out, she had other alternatives. She could have stayed. Nevertheless, *it was certainly not unreasonable* that being denied this job that she had held for a long period of time in anticipation of promotion and reduced back to an accounting clerk—*it was not unreasonable that she quit her job.*

Record, vol. 11, at 1247–48 (emphasis added). The trial court's findings that Ms. Derr was not constructively discharged and that she acted reasonably in resigning are

inconsistent when viewed in light of the proper test for determining when an employee is constructively discharged, which we enunciate below.

The constructive discharge doctrine has been applied to Title VII cases by every circuit court of appeals but one. There is, however, a divergence of opinion among the circuits as to the findings necessary to apply the doctrine. While some courts require the employee to prove the employer's specific intent to force him to leave, *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), others have adopted a less stringent objective standard requiring the employee to prove that the employer has made working conditions so difficult that a reasonable person in the employee's shoes would feel forced to resign. *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887–88 (3d Cir.1984). In *Satterwhite v. Smith*, 744 F.2d 1380, 1383 n. 4 (9th Cir. 1984), the court noted that "[t]he state of the law in the Tenth Circuit on this subject is confusing. ... [L]anguage in the cases purports to embrace the reasonable employee standard *as well as* the employer's subjective-intent standard."

It is true that the Tenth Circuit's position on this issue has been less than clear. But in *Irving v. Dubuque Packing Co.*, 689 F.2d 170 (10th Cir.1982), our most recent pronouncement in this area, we intended to clarify our position by adopting the standard set out in *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61 (5th Cir.1980). *Irving* cites *Bourque* with approval and concludes:

A finding of constructive discharge depends upon whether a reasonable [person] would view the working conditions as intolerable, not upon the subjective view of the employee-claimant.[3]

---

2. Ms. Derr's counsel apparently agrees that Ms. Derr is not entitled to "back pay" absent constructive discharge. He argued to the trial court that, even if Ms. Derr prevailed on her discrimination claim, a finding that she was not constructively discharged "foreclosed her from any monetary recovery at all." Record, vol. 10, at 1044.

3. *Bourque* has become the leading case on the subject of constructive discharge under Title VII. In *Bourque,* the court ruled that, in order to find constructive discharge, "the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." 617

689 F.2d at 172. While some language in *Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975), and *Irving, supra* at 172, suggests that our focus may once have been on the explicit subjective intent of the employer to force the employee to leave, our conclusion and discussions in *Irving* indicate that we have been struggling with the problem of what the employee must prove.

The examples of the quality and quantity of proof given in *Irving* demonstrate that typically proof of any element in these cases is circumstantial. What *Bourque* has done for the problem of proof is to cut through the details and difficulty of analyzing the employer's state of mind and focus on an objective standard. Thus, proof of constructive discharge "depends upon whether a reasonable [person] would view the working conditions as intolerable." *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir.1982). This shift in emphasis is consistent with the District of Columbia Circuit's observation that "[t]o the extent that [the employer] denies a conscious design to force [the employee] to resign, we note that an employer's subjective intent is irrelevant; [*the employer*] *must be held to have intended those consequences it could reasonably have foreseen. See, e.g., Bourque*, 617 F.2d at 65." *Clark v. Marsh*, 665 F.2d 1168, 1175 n. 8 (D.C.Cir.1981) (emphasis added).

■ We trust that our unqualified adoption of this objective standard will clarify any ambiguity which may have remained in our cases to this point. We also believe the standard will simplify the task of the finder of fact in determining not only whether the employer discriminated against the employee but also whether the manner of discrimination rendered work conditions intolerable. In brief, this standard addresses the concerns expressed in both our *Muller* and *Irving* cases. Our position, then, is that the question on which constructive discharge cases turn is simply whether the employer by its illegal discrim-

inatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. In light of our clarification of the standard for finding a constructive discharge, we remand to the trial court to determine whether Ms. Derr was constructively discharged.

■ Finally, Gulf contends that the trial court erred in holding that Ms. Derr was the prevailing party, thus entitling her to reasonable attorney's fees under 42 U.S.C. § 2000e–5(k). Ms. Derr alleged that Gulf discriminated against her, and the trial court so found. We have affirmed that finding. Therefore, Ms. Derr prevailed in her lawsuit because she succeeded on a " 'significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.' " *In re Kansas Congressional District's Reapportionment Cases*, 745 F.2d 610, 612 (10th Cir.1984) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ). Because Ms. Derr was a prevailing party and will be entitled to at least nominal damages, she is, regardless of the trial court's constructive discharge finding, entitled to reasonable attorney's fees. As we stated in *Nephew v. City of Aurora*, 766 F.2d 1464 (10th Cir. 1985), "[w]e have no trouble finding that the plaintiffs in the instant case are the prevailing parties even though they won only nominal damages." *Id.* at 1466. Although we held in *Nephew* that the trial court abused its discretion by not discounting the fee award, we stated that our holding did not imply that "an award of nominal damages necessarily means that a corresponding fee award must also be nominal." *Id.* at 1467. In light of our remand on the damage issue, it would be premature for us to determine whether the amount of attorney's fees awarded by the trial court is excessive. The trial court should reexamine this issue in light of its constructive discharge ruling and award appropriate attorney's fees.

Remanded with instructions.

F.2d at 65 (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977) ).