Nancy BAKER, Plaintiff–Appellee,

v.

The WEYERHAEUSER COMPANY, a Washington corporation, Defendant–Appellant.

No. 89–7013.

United States Court of Appeals, Tenth Circuit.

May 30, 1990.

J. Patrick Cremin (Janet M. Reasor and C. Kevin Morrison of Hall Estill, Hardwick, Gable, Golden & Nelson, P.C., with him on the brief), Tulsa, Okl., for defendant-appellant.

Susan Manchester of Miskovsky, Sullivan, Taylor & Manchester, Oklahoma City, Okl., for plaintiff-appellee.

Before TACHA and McWILLIAMS, Circuit Judges, and CHRISTENSEN, District Judge.*

McWILLIAMS, Circuit Judge.

Nancy Baker, a single twenty-five year old mother of two children, brought suit in the United States District Court for the Eastern District of Oklahoma against her employer, The Weyerhaeuser Company, a Washington corporation with a plant in Valiant, Oklahoma. The gist of Baker's complaint was that she had been sexually harassed while on the job in Weyerhaeuser's paper mill in Valiant by a fellow employee and that Weyerhaeuser knew, or should have known, of such harassment and did not take steps to stop the harassment.

As a first cause of action, Baker pled an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* In essence, Baker alleged that Weyerhaeuser knowingly allowed sexual harassment in the workplace of female employees by male employees thereby creating a hostile work environment, and she specifically alleged that she suffered "repeated offensive sexual flirtations, advances, propositions, continued and repeated verbal commentaries and sexually suggestive conduct by an employee, A.L. Caldwell, known to Weyerhaeuser and its agents and supervisors to be a sexual harasser."

As a second cause of action, Baker pled a pendent action based on the Oklahoma common law tort of intentional infliction of emotional distress by outrageous conduct.[1] Specifically, Baker in her second cause of action alleged that she had suffered severe emotional suffering and mental pain, anguish, and distress caused by the sexual harassment of her by A.L. Caldwell which conduct was "known to the defendant and ignored by the defendant."

The pendent state claim was tried to a jury simultaneously with the trial of the Title VII claim to the court. The jury returned a verdict awarding $45,000 to Baker as actual damages, and $45,000 as punitive damages. The district court later made findings in favor of Baker on her Title VII claim against Weyerhaeuser and awarded her nominal damages in the sum of $1.00. Weyerhaeuser appeals.

### Title VII Claim

As indicated, the district court made its findings in the Title VII claim several weeks after the jury had returned its verdict in Baker's pendent claim based on Oklahoma law concerning intentional infliction of emotional distress by outrageous conduct. In so doing, the district court, in connection with Baker's Title VII claim, found, *inter alia*, as follows: (1) The basis

---

* Honorable A. Sherman Christensen, United States District Judge for the District of Utah, sitting by designation.

1. The parties agree that Oklahoma recognizes an independent tort action for intentional inflic-

tion of emotional distress, also called the tort of outrage. *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986).

for Baker's intentional infliction of emotional distress claim was that Weyerhaeuser had intentionally or recklessly inflicted severe emotional distress upon her by outrageous conduct which consisted of Weyerhaeuser's failure to take appropriate action against Baker's fellow employee, A.L. Caldwell, who was sexually harassing Baker on the job; (2) that the conduct of A.L. Caldwell was pervasive and ongoing for a period of months; (3) that Baker had complained to fellow workers and to her supervisor; (4) that such harassment caused Baker to have severe emotional distress and created a hostile and abusive working environment; (5) that Weyerhaeuser knew, or should have known, that A.L. Caldwell was sexually harassing Baker and failed to take corrective action; (6) that Baker herself was never discharged, demoted or denied promotion and was in fact still working at time of trial for Weyerhaeuser; and (7) then generally found the issues in Baker's Title VII claim in favor of Baker and against Weyerhaeuser.

For conclusions of law, the district court held, *inter alia*, as follows: (1) sexual harassment of an employee which creates a hostile or offensive work environment is actionable under Title VII; (2) for such conduct to be actionable it must be sufficiently severe or pervasive to alter the condition of employment; (3) damages for emotional distress, however, are not actionable under Title VII; and (4) accordingly, the issues are found in favor of Baker and her nominal damages are assessed at $1.00.

On appeal, Weyerhaeuser challenges the district court's findings and conclusions on Baker's Title VII claim, alleging that they are so sketchy and so conclusory that there cannot be a meaningful appellate review, and, further, even if the findings and conclusions be accepted as sufficient, the record does not support them.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privilege of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59 (1986), the Supreme Court held "that a plaintiff may establish a violation of Title VII by proving discrimination based on sex has created a hostile or abusive work environment." In line with *Meritor*, in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987), we spoke as follows:

> Although sexual harassment may take a variety of forms, courts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment. *Quid pro quo* harassment occurs when submission to sexual conduct is made a condition of concrete employment benefits. Alternatively, hostile work environment harassment arises when sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." "For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. (Citations omitted.)

Both parties agree that Baker's Title VII claim is not based on so-called "*quid pro quo* harassment," but is based on so-called "hostile work environment" caused by sexual harassment. As above stated, the district court found that the sexual harassment of Baker by A.L. Caldwell was so severe and continuous as to create a hostile and abusive work environment establishing a Title VII claim, and that Weyerhaeuser either knew, or should have known of such fact, and failed to take corrective measures. We think the district court's findings are sufficient for appellate review, and, in our view, the record supports such findings.

■ Plaintiff's evidence showed that in 1986 A.L. Caldwell was disciplined by Weyerhaeuser for sexually harassing another female employee. In January 1987, Baker was transferred to a work assignment where "Rocky" Kellebrew was the supervisor, and Caldwell was one of the employees on her shift. Baker was a so-called "sixth hand," and, as such, her duties consisted of performing clean-up work. The order of seniority above Baker was a fifth hand, fourth hand, third hand, back tender, machine tender, and foreman (Kellebrew). Caldwell was set-up back tender and third hand on Baker's shift, indicative of his seniority over Baker, and because of this fact he did, from time to time, give operational orders to Baker. However, Caldwell had no authority to fire any employee.[2]

Baker testified at length concerning the sexual harassment inflicted on her by Caldwell from January 1987 until July 1987. We need not recite the details, as Weyerhaeuser concedes that Caldwell did sexually harass Baker. Suffice it to say, Caldwell's sexual overtures were explicit and repeated, but unsuccessful and never welcomed. There was testimony that when Baker spurned Caldwell's advances, he gave her "extra" work.

Baker testified that in January, 1987, she complained to her supervisor, Kellebrew, and that in June, 1987, she complained to Kellebrew and his substitute, Duckett, about Caldwell's actions, and that both Kellebrew and Duckett were aware that Caldwell had been disciplined in 1986 for sexually harassing another female employee. The extent of Baker's complaint to Kellebrew and Duckett is disputed. Her testimony, however, was that she complained in sufficient detail to put Kellebrew and Duckett on notice that hers was a serious complaint, and that Kellebrew and Duckett did nothing in response to her complaints. Further, neither Kellebrew nor Duckett reported Baker's complaint to "upstairs management," as they were required to do by company policy.

In July 1987, Caldwell was investigated on a complaint by another female employee. In the course of that investigation, "upstairs management" first became aware of Baker's prior complaints. This investigation resulted in the suspension of Caldwell, and three days after Caldwell was suspended, he was discharged.

■ In the course of his findings on Baker's Title VII claim, the district court noted that Caldwell was "senior" to Baker and "sometimes acted as plaintiff's supervisor. The jury was instructed on agency and found an agency relationship between Caldwell and the defendant." Weyerhaeuser argues, on appeal, that such was a critical finding and is not supported by the record. We do not agree that such was a critical finding. The crucial findings of the district court, in our view, were that pervasive sexual harassment of Baker by Caldwell prevailed in the workplace, and that Weyerhaeuser, through Kellebrew and Duckett, and others, knew, or should have known, of such harassment and did nothing to correct it. Whether Caldwell "sometimes" acted as Baker's supervisor was not the basis for the district court's finding in favor of Baker.

Weyerhaeuser also notes that in its findings on Baker's Title VII claim, the district judge stated that his findings in the Title VII case were in accord with the jury's verdict in the trial of Baker's pendent claim. Weyerhaeuser argues that the district court's findings in the Title VII action did not have to be in accord with the district court's understanding of the general verdict returned by the jury since the essential elements of the Title VII claim were not the same as the essential elements in the present claim. Be that as it may, we do not regard the district judge's comment to indicate that he was "bound" to follow his understanding of the jury's verdict. It was simply a comment that his findings on the Title VII claim were in accord with his understanding of the jury's verdict in the pendent claim, i.e., that there was pervasive sexual harassment of Baker by Cald-

---

**2.** Despite the district court's finding that Caldwell "sometimes acted as plaintiff's supervisor," we assume for purposes of this opinion that Caldwell was only a co-worker.

well in the workplace and that Weyerhaeuser, through its agents, knew, or should have known, of Caldwell's actions and did not take corrective measures.

In sum, the district court's findings and conclusions are sufficient for appellate review, and the crucial findings are supported by the record. In support of the foregoing, see, by way of example, *Hall v. Gus Construction Company, Inc.*, 842 F.2d 1010 (8th Cir.1988) and *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417 (7th Cir.1986).

In *Allis–Chalmers*, Hunter, a black, brought an action under 42 U.S.C. § 1981 against his corporate employer, Allis–Chalmers, and one of its supervisors, for their failure to protect him from racial harassment in the workplace by white co-workers. Hunter prevailed in a jury trial. On appeal, the employer, Allis–Chalmers, claimed that it could not be liable for every racial slur by a non-supervisory member of its work force and could not "be charged by law with discharging all the Archie Bunkers in its employ." The Seventh Circuit agreed but went on to describe, as follows, how a corporate employer might still be liable for racial harassment in the workplace:

> But failure to take reasonable steps to prevent a barrage of racist acts, epithets, and threats can make an employer liable if management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment. This principle is sometimes described incorrectly as an application of respondeat superior. Racial harassment is an intentional wrong, and the doctrine of respondeat superior makes an employer liable only for those intentional wrongs of his employees that are committed in furtherance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong. It would be the rare case where racial harassment against a co-worker could be thought by the author of the harassment to help the employer's business.

But an employer is directly liable (that is, independently of respondeat superior) for those torts committed against one employee by another, whether or not committed in furtherance of the employer's business, that the employer could have prevented by reasonable care in hiring, supervising, or if necessary firing the tortfeasor. Consistent with this principle, an employer who has reason to know that one of his employees is being harassed in the workplace by others on grounds of race, sex, religion, or national origin, and does nothing about it, is blameworthy. He is unlikely to know or have reason to know of casual, isolated, and infrequent slurs; it is only when they are so egregious, numerous, and concentrated as to add up to a campaign of harassment that the employer will be culpable for failure to discover what is going on and to take remedial steps. Other grounds for the distinction between the isolated slur and the campaign of harassment are that, the more slurs there are, the more harm they will do to the victim and the more the employer can do about them. He can reduce the frequency of racial slurs markedly, even if not to zero—so long as their frequency is not close to zero to begin with. (citations omitted).

In *Hall*, three female road construction traffic controllers, claiming that they had been constructively discharged as result of sexual harassment by male co-workers, brought a Title VII action against their corporate employer and one of its foremen. A magistrate, hearing the case pursuant to agreement of the parties, entered judgment for the plaintiffs. On appeal, the defendants challenged the sufficiency of the evidence to show employer and supervisory liability. In holding that there was sufficient evidence, the Eighth Circuit adopted the rationale of *Hunter v. Allis–Chalmers, supra*, and in so doing spoke as follows:

> In this case, Mundorf, as the agent of Gus Construction Co., had both actual and constructive notice of the campaign of harassment against the three women. Each of the women met with Mundorf individually to complain of the treatment

they were receiving from their coworkers. The women also met with Mundorf as a group to discuss the hostile work environment. Furthermore, Mundorf observed many of the incidents. He knew that the men bombarded the women with sexual insults and abusive treatment. Even if Mundorf did not know everything that went on, the incidents of harassment here, as in *Hunter*, were so numerous that Mundorf and Gus Construction Co. are liable for failing to discover what was going on and to take remedial steps to put an end to it.

### Pendent Claim

As indicated, Baker's pendent state claim was based on the same underlying facts which formed the basis for her Title VII claim. In this regard, it was Baker's theory of the case that such facts showed an intentional infliction by Weyerhaeuser of emotional distress on Baker through its own outrageous conduct. The "outrageous conduct," in turn, was established, according to Baker, by Weyerhaeuser's failure to take corrective action against Caldwell even though Weyerhaeuser had knowledge, either actual or constructive, that Caldwell was severely and repeatedly sexually harassing Baker, as well as many other female employees, over a prolonged period of time. In line therewith, Baker emphasizes that Caldwell's sexual harassment of her was preceded in 1986 when Caldwell was disciplined by Weyerhaeuser for sexually harassing another employee. As a result of Weyerhaeuser's conduct, Baker claimed that she suffered severe emotional distress, for which she sought both actual and punitive damages. As indicated, the jury awarded Baker $45,000 as actual damages and $45,000 as punitive damages. Weyerhaeuser seeks reversal of the judgment entered.

■ At the close of Baker's case, Weyerhaeuser moved for a directed verdict on Baker's pendent claim. The motion was denied, and, on appeal, Weyerhaeuser ar-

gued that such is reversible error. On appeal, counsel states "that one necessary element to plaintiff's success on her state tort law claim of intentional infliction of emotional distress was that of *respondeat superior* liability imputed to Weyerhaeuser for the acts of Caldwell." Counsel argues that Weyerhaeuser could only be liable on the basis of *respondeat superior* for Caldwell's harassment of Baker if such were committed by Caldwell in the course of, and in furtherance of, his employment with Weyerhaeuser, which obviously it was not, or if Weyerhaeuser, after learning of the harassment, ratified his actions, which it did not—rather, it fired Caldwell.

In our view, this argument misses the point. The gravamen of Baker's action against Weyerhaeuser was not that Caldwell's actions towards Baker were, on the basis of an agency relationship, somehow themselves imputed to Weyerhaeuser. Rather, Baker's action against Weyerhaeuser was based on Weyerhaeuser's own conduct, namely, its utter failure through its officers and supervisors to take action against Caldwell, a known sexual harasser of females.

■ Counsel next complains about the instructions given the jury, stating that many of them were "unnecessary and were not requested by either party." [3] The instructions are perhaps not model ones, but we think the jury was adequately instructed on the essential elements. In this connection, the district court instructed the jury that Baker claimed that Weyerhaeuser "intentionally or recklessly inflicted severe emotional distress upon her by extreme and outrageous conduct," and that "such conduct by the defendant was in failing to take appropriate action against another employee of the defendant who was sexually harassing her on the job." The district court then instructed the jury that "Weyerhaeuser denies plaintiff's allegations concerning its conduct, and alleges it took appropriate action against her co-worker."

---

3. Weyerhaeuser did not raise this issue at trial. In fact, the only objection to the Jury Instructions made at trial which Weyerhaeuser also raises on appeal is to the district court's use of

the phrase "sexual harassment" in one of the instructions. This was not an error. As to the other jury instruction issues raised on appeal, Weyerhaeuser has failed to show plain error.

In line with this framing of the issue, the district court further instructed the jury on the "essential elements of her [Baker's] case." [4] In this regard, the district court instructed the jury as follows:

> In this case, if you find from the evidence that the defendant Weyerhaeuser knew or should have known of the sexual harassment of the plaintiff by its employee A.L. Caldwell, and if you find that the defendant failed to take appropriate action to prevent that harassment from injuring the plaintiff, then you must find the defendant responsible for the conduct of its employee A.L. Caldwell; otherwise defendant is not responsible for his conduct.

■ Weyerhaeuser's final argument is that by no stretch of anyone's imagination could its "conduct" equate with "outrageous conduct," and therefore Baker's pendent claim must fail in its entirety, which would include her claim for both actual and punitive damages. In a nutshell, Weyerhaeuser's position is that when it learned of Caldwell's actions toward Baker, it promptly took the ultimate disciplinary action by firing him. Baker counters by claiming, in effect, that Caldwell should have been fired long before he actually was, that in the interim between the time he should have been fired and was fired, Weyerhaeuser, knowing that Caldwell was harassing Baker and others, did nothing when it should have acted, and, by its inaction, permitted a known sex maniac to run amok in the workplace, inflicting extreme emotional distress on a twenty-five year old mother of two who desperately needed to keep her job. Such posed an issue of fact which the jury has now resolved.

Judgment affirmed.

---

4. The jury was also instructed that Weyerhaeuser was a corporation, and that a corporation can only act through its directors, officers, agents, and employees and that Weyerhaeuser was responsible for the acts of such person done within their actual or apparent authority.