Martha GRIFFITH, Plaintiff–Appellant,

v.

STATE OF COLORADO, DIVISION
OF YOUTH SERVICES,
Defendant–Appellee.

No. 93–1005.

United States Court of Appeals,
Tenth Circuit.

Feb. 28, 1994.

**1324**

George C. Price of Miles & Epstein, Denver, Colorado, for appellant.

Simon P. Lipstein (Gale A. Norton, Attorney General, Raymond T. Slaughter, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Timothy R. Arnold, Deputy Attorney General, Gregg E. Kay, First Assistant Attorney General, with him on the brief), Assistant Attorney General, Denver, Colorado, for appellee.

Before KELLY and BARRETT, Circuit Judges, and ROGERS *, District Judge.

* The Honorable Richard D. Rogers, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

BARRETT, Senior Circuit Judge.

This Title VII, 42 U.S.C. § 2000e, *et seq.*, case is before us on appeal from the district court's grant of summary judgment in favor of the defendant, State of Colorado, Division of Youth Services (DYS). The plaintiff-appellant, Martha Griffith, hereinafter referred to as Griffith or plaintiff, claimed that she was subjected to actionable racial and sexual discrimination and harassment and retaliatory actions while employed by DYS. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### The Pleadings

In her complaint, Griffith alleged that she, as a five year white employee of DYS at the Adams County, Colorado, Youth Services Center, was subjected to ongoing and continuous sexual and racial discrimination and harassment by Mr. John Grier, a black, who served as her immediate supervisor and as Assistant Director of the Center. Griffith further alleged that she was the subject of continuing discrimination and retaliatory actions even after Grier was terminated, including denials of promotion. She prayed that judgment be entered in her favor indicating that defendant violated Title VII. (Plaintiff–Appellant's Appendix, pp. 113–15).

In its answer, the DYS alleged, *inter alia,* that there had been an accord and satisfaction or a settlement and release of Griffith's claims, that Griffith had not been discriminated against by the DYS, that if anyone in the employ of the DYS had engaged in discrimination or harassment toward Griffith, appropriate actions had been taken toward those persons, and that Griffith's complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted. (Plaintiff–Appellant's Appendix, pp. 124–25).

### The Facts

Griffith was employed by DYS for eight years, serving as a Youth Service Worker B, the last five years having been served at the

Adams County, Colorado, Youth Services Center. From 1987 until April 3, 1990, Griffith's immediate supervisor was Grier.

On March 5, 1990, Griffith met with Madline Sa Bell, the personnel administrator of DYS, and informed Sa Bell that Grier had sexually harassed her. Sa Bell informed Griffith that she could proceed with either a charge of discrimination or an internal grievance. Griffith informed Sa Bell that she would proceed with an internal grievance after she returned from her vacation. In an affidavit executed by Griffith on August 13, 1990, (Plaintiff–Appellant's Appendix, pp. 116–20), Griffith stated that Grier had: criticized her approach to kids who were having behavior problems and told her to cuff and shackle them, in contradiction to DYS procedures; threatened to write her up; admonished her for hugging the kids and told her that he would write her up if he ever saw her hugging them; hollered at her in the presence of the kids; made statements about her physical appearance as ugly and overweight, and called her a stupid white woman; and cussed and used words such as fucking, Goddamn and shit while professing to be a wonderful Christian. Griffith further alleged that when she told Grier that he was intimidating and overbearing, Grier remarked that Griffith would not say that if he were white. Grier talked about helping "his people" and made it plain he was speaking of black people, and he picked on mostly white females. Griffith saw Grier put his arm around a female worker's waist and kiss her on the neck, which she considered obscene; she also had heard rumors that Grier had affairs with others.

On April 3, 1990, following her return from her vacation, Griffith met with Larry Johnson, Director of DYS, and grieved that she had been sexually harassed by Grier. Johnson phoned Sa Bell immediately following his meeting with Griffith and within an hour after the meeting, Johnson suspended Grier from his employment pending an investigation and instructed Grier to leave the workplace. Following an investigation, Grier was terminated.

Immediately after her meeting with Johnson on April 3, 1990, Griffith was placed on administrative leave with full pay through August 8, 1990. Griffith worked part time for three weeks in July, 1990, in DYS's Planning and Evaluation Unit. As part of her worker's compensation claim settlement, Griffith retained all benefits due her while she was on administrative leave, including the shift differential pay rate she would have earned. In addition, DYS paid all costs of her therapy and DYS provided her worker's compensation benefits for her alleged job-related stress. When Griffith indicated that she was ready to return to work on a part-time basis in July, 1990, she was provided work at another facility until August 8, 1990, when she felt she was ready to return to the Adams Youth Services Center.

### The District Court Order

The district court granted summary judgment in favor of DYS via a Memorandum Opinion and Order of December 7, 1992, 808 F.Supp. 763. The court found, from undisputed facts, that: Griffith was given administrative leave from April 3, 1990, to August 8, 1990; she suffered no loss of wages, benefits or tenure; and DYS paid all of her therapy bills and provided her with worker's compensation benefits to cover her job-related stress.

The court further found that Title VII permits a court to order such affirmative action as may be appropriate, other than compensatory and punitive damages, including reinstatement or hiring of employees with or without back pay, and that Griffith had been made whole and had not demonstrated any actual damages. As to the award of nominal damages, the court recognized a split among the circuits but ruled that nominal damages are compensatory in nature, and since Title VII provides for equitable, not legal relief, Griffith could not be awarded nominal damages.

As to Griffith's retaliatory discrimination and denial of promotion claim, the court held that Griffith had failed to point to a specific position or promotion she could have succeeded to in view of a state-wide hiring freeze resulting in no promotions or open competitive announcements for DYS counselors since 1990. Noting that Griffith's EEOC

charge was filed on April 4, 1990, the court found that it was uncontroverted that no promotions nor open competitive (new positions) for DYS counselors took place after that date. Accordingly, the court held that Griffith was not the victim of retaliation. Concluding that Griffith had not raised a question of material fact, the court granted judgment in favor of DYS.

## Contentions on Appeal

On appeal, Griffith contends that the district court erred (1) in refusing to grant nominal damages because nominal damages are an appropriate equitable relief under Title VII and are also necessary to effectuate its purposes, (2) in granting summary judgment because DYS's motion did not address the availability of other equitable relief, and (3) in granting summary judgment on her retaliation/continuing discrimination claim because there remains an unresolved factual dispute.

## Standard of Review

"We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c) ..." *Applied Genetics, Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citation omitted). "Summary Judgment in appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir. 1991).

### I.

### A.

■ Griffith argues that because her allegations concerning a hostile work environment at DYS have not been challenged, she stated an actionable sexual harassment claim and cause of action under Title VII. She contends that she complained about Grier's abusive conduct to superiors months before the situation came to a head in the spring of 1990 and that the facts enumerated in her affidavit concerning Grier's conduct could hardly have escaped the DYS administration.

While acknowledging that Congress did limit the scope of remedies under Title VII, Griffith contends that Congress did not thereby obliterate the cause of action. She states that "At the very least, the courts must fashion remedies to cure violations of the law within the limits set by Congress" and that "... an equitable remedy of some sort was both necessary and appropriate here." (Plaintiff–Appellant's Opening Brief, pp. 11–12). On that predicate, Griffith argues that the district court erred in rejecting the holdings of those courts to the effect that one in Griffith's position is entitled, at least, to nominal damages. *Id.* at p. 4.

Griffith points to *Baker v. Weyerhaeuser Company,* 903 F.2d 1342 (10th Cir.1990) and *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986) for the proposition that while no statements in those cases represent holdings that nominal damages are available under Title VII, still "... the language in *Derr* should be read as a fairly strong indication that this court is likely to find an award of nominal damages appropriate." (Plaintiff–Appellant's Opening Brief, p. 4).

In *Baker,* we simply affirmed the district court's award of $1.00 nominal damages on the Title VII claim after the jury returned verdicts of $45,000 actual damages and $45,000 punitive damages on a pendent Oklahoma common law tort claim of intentional infliction of emotional distress by outrageous conduct. No challenge was raised in that case to the nominal damage award and there was no discussion by the court relative thereto. In *Derr,* a Title VII case, the court found that Gulf Oil Corp. discriminated against Derr because of her sex when it demoted her. She was awarded nominal damages. The case was remanded to determine whether Derr had been constructively discharged. The court did not discuss the issue as to whether nominal damages are legal or equitable in nature, because it concluded that Ms. Derr was the "prevailing party" inasmuch as she had succeeded in a "significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Id.* at 344. The *Derr* court concluded:

> ... As we stated in *Nephew v. City of Aurora,* 766 F.2d 1464 (10th Cir.1985),

"[w]e have no trouble finding that the plaintiffs in the instant case are the prevailing parties even though they won only nominal damages." *Id.* at 1466. Although we held in *Nephew* that the trial court abused its discretion by not discounting the fee award, we stated that our holding did not imply that "an award of nominal damages necessarily means that a corresponding fee award must also be nominal." *Id.* at 1467.

42 U.S.C. § 1983 provides for damages, both compensatory and punitive, and injunctive relief. *See Wren v. Spurlock,* 798 F.2d 1313 (10th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987) (affirming award of both compensatory and punitive damages); *Jackson v. Albuquerque,* 890 F.2d 225 (10th Cir.1989) (recognizing reinstatement of discharged black employee and award of front pay). 42 U.S.C. § 2000e, et seq., armed the courts with equitable power to make persons whole for injuries suffered on account of unlawful employment discrimination, *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), including reinstatement or hiring and back pay. *Id.* at 419 n. 11, 95 S.Ct. at 2372 n. 11. The district court in the instant case analyzed a number of cases dealing with the subject whether nominal damages are appropriate as an equitable remedy under Title VII.

Cases holding that nominal damages are not an equitable remedy under Title VII include *Landgraf v. USI Film Products,* 968 F.2d 427, 431 (5th Cir.1992), *cert. granted in part,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993), (nominal damages are legal, not equitable relief and are therefore outside the scope of remedies available under Title VII); *King v. Board of Regents of Univ. of Wis. System,* 898 F.2d 533, 537 (7th Cir.1990) (compensatory, nominal, and punitive damages are not available under Title VII); *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235, 1240 (7th Cir.1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990) (where reinstatement, back pay, and any other sources of compensatory damages are not available, the defendant must prevail; nominal damages are not

available as equitable relief); *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1184 (7th Cir.1986) (damages are not equitable relief; if Congress wishes to amend the provisions of Title VII to provide a remedy of damages, it can do so).

Some of the authorities relied upon by Griffith for the award of nominal damages under Title VII emphasize that such an award would authorize an award of attorneys' fees to the plaintiff, as the prevailing party. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 905 (11th Cir.1988); *Maney v. Brinkley Municipal Waterworks and Sewer Dept.,* 802 F.2d 1073, 1076 (8th Cir. 1986) (award of nominal damages will support award of reasonable attorneys' fees); *Katz v. Dole,* 709 F.2d 251, 253 n. 1 (4th Cir.1983) (even if Katz does not regain her job, she might be entitled to nominal damages and attorneys fees); *T & S Service Associates, Inc. v. Crenson,* 666 F.2d 722, 728 n. 8 (1st Cir.1981) (where compensatory damages are not available, court should consider award of nominal damages with attorneys' fees).

We are persuaded that the district court was correct in ruling that nominal damages are compensatory in nature and since Title VII provides for equitable, not legal relief, nominal damages must not be awarded under Title VII.

The word "damages" is commonly understood to connote payment in money for plaintiff's losses caused by defendant's breach of duty. *United States v. Balistrieri,* 981 F.2d 916, 928 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). Nominal damages are a mere token, signifying that the plaintiff's rights were technically invaded even though he could not prove any loss or damage. *Magnett v. Pelletier,* 488 F.2d 33, 35 (1st Cir.1973).

In *Manders v. Okl. ex. rel. Dept. of Mental Health,* 875 F.2d 263 (10th Cir.1989), we rejected plaintiff's motion for attorneys' fees of $6,500 for services rendered during a state grievance procedure undertaken prior to filing a Title VII action. We concluded that allowing the fees "... would tend to discourage private employers like the defendants in

this case, from instituting potentially ameliorative procedures." *Id.* at 267. In the same vein, we observe that in the instant case the DYS acted promptly in suspending and terminating Grier, placing Griffith on four months of administrative leave with full pay, paying Griffith's therapy bills and providing her with worker's compensation benefits to cover job-related stress.

### B.

The plaintiff-appellant's opening brief in this case is dated April 8, 1993. The Answer Brief of defendant-appellee is dated May 21, 1993. No supplemental briefs or authorities have been filed. The parties have not cited or otherwise referred us to the United States Supreme Court opinion entitled *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) which, we conclude, also mandates an affirmance of the district court's order granting summary judgment on behalf of DYS, although upon grounds other than those relied upon by the district court.

■ We may affirm on any ground adequately presented to the district court, *Medina v. City & County of Denver,* 960 F.2d 1493, 1500 (10th Cir.1992), or on a ground not raised in the district court provided that the record is sufficiently clear to permit us to do so if both parties had an adequate opportunity to develop the record on the issue. *Seibert v. University of Oklahoma,* 867 F.2d 591, 597 (10th Cir.1989).

■ In *Farrar,* a 42 U.S.C. § 1983 civil rights case, the Supreme Court construed 42 U.S.C. § 1988 to determine whether a plaintiff who is awarded nominal damages is a "prevailing party" entitled to an attorney fee award. In that case, the district court awarded attorney's fees of $280,000.

42 U.S.C. § 1988(b) in pertinent part, provides that in any action brought to enforce 42 U.S.C. §§ 1981–1983, 1985, 1986 and 20 U.S.C. §§ 1681, et seq. [Title IX] or 42 U.S.C. §§ 2000d, et seq. [Title VI], "... the court, in its discretion may allow the prevail-

ing party, other than the United States, a reasonable attorney's fee as part of the costs."

42 U.S.C. § 2000e–5(k) provides that "In any action or proceeding under this title [Title VII] [42 U.S.C. §§ 2000e et seq.], the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

The standard for the award of attorneys' fee under § 1988(b) is the same as that under § 2000e–5(k). *Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472 (9th Cir. 1986). In *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235 (7th Cir.1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990), the court refused to grant nominal damages under Title VII simply to make the plaintiff a "prevailing party" entitled to attorney fees. *But see Derr,* 796 F.2d at 344.

We conclude that there is no difference between the two statutes inasmuch as the linchpin for recovery of a reasonable attorney's fee is simply that the plaintiff qualify as the "prevailing party." However, *Farrar* teaches that even though a nominal damage award qualifies a plaintiff as the "prevailing party," *id.* —— U.S. at ——, 113 S.Ct. at 573, still in a § 1983 action seeking monetary relief, "when the plaintiff fails to prove an essential element of his claim for monetary relief, ... the only reasonable fee is usually no fee at all." *Id.* at ——, 113 S.Ct. at 575.

In *Farrar,* the only remedy accorded the plaintiff in the district court was an award of nominal damages. That became the vehicle for the court's subsequent award of plaintiff's attorney's fees of $280,000. In the instant case, as in *Farrar,* the plaintiff did not succeed in any manner on the merits.

In *Farrar,*[1] the court held:

the plaintiff to attorneys' fees. The Court cited *Nephew v. Aurora,* 830 F.2d 1547 (10th Cir.1987) (en banc) (Barrett, J., dissenting), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1269, 99 L.Ed.2d 481

---

1. The court, in footnote 2, p. 571, observed the conflict in the circuits on the issue as to whether an award of nominal damages confers prevailing party status on a civil rights plaintiff, entitling

Although the "technical" nature of a nominal damage award or any other judgment does not effect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, "the degree of plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Garland, supra* [*Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) ], 489 U.S. at 793, 109 S.Ct. at 1493. Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley, supra*, 461 U.S. at 436, 103 S.Ct. at 1941. Accord, *Marek v. Chesny*, 473 U.S. 1, 11, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985). In this case, petitioners received nominal damages instead of the $17 million in compensatory damages that they sought.

This litigation accomplished little beyond giving petitioners "the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated" in some unspecified way. *Hewitt, supra*, [*Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ] 482 U.S. at 762, 107 S.Ct. at 2676. We have already observed that if a "plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley, supra*, 461 U.S. at 436, 103 S.Ct. at 1941.

\* \* \* \* \* \*

... When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, [or, in the instant case injunctive or equitable relief] see *Carey, supra*, [*Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ] at 256–257, 264, 98 S.Ct. at 1048–1049, 1052, *the only*

*reasonable fee is usually no fee at all.* In an apparent failure to heed our admonition that fee awards under § 1988 were never intended to " 'produce windfalls to attorneys,' " [*City of* ] *Riverside v. Rivera, supra*, 477 U.S. [561] at 580, 106 S.Ct. [2686] at 2697 [91 L.Ed.2d 466 (1986) ] ... the District Court awarded $280,000 in attorneys' fees without "consider[ing] the relationship between the extent of success and the amount of the fee award." *Hensley, supra*, 461 U.S. at 438, 103 S.Ct. at 1941. (Emphasis supplied).

— U.S. at ———–, 113 S.Ct. at 574–75.

Guided by *Farrar*, we hold that in light of the failure by Griffith to accomplish any success in this litigation, she would not be entitled to any attorney fee award.

## II.

Griffith contends that the district court erred in granting summary judgment to DYS because the DYS motion did not address the availability of other equitable relief. Griffith argues that although the district court noted that 42 U.S.C. § 2000e–5(g)(1) allows for "any other equitable relief as the Court deems appropriate," the Court ignored that language after disposing of the nominal damages question. (Plaintiff–Appellant's Opening Brief, p. 9). Griffith claims that other equitable relief, whether affirmative or injunctive, would be appropriate in this case because:

> Griffith complained that Mr. Grier's abusive conduct to superiors several months before the situation came to a head in the spring of 1990.... It also appears that the head of the facility, Larry Johnson, may have witnessed harassment of Griffith by Grier more than two years before any action was taken.... In any event, the facts enumerated in Griffith's Affidavit, App. at pp. 116–120, could hardly have escaped the attention of even a minimally concerned administration. It can hardly be argued that there is no need to require some affirmative equitable relief because

(1988) wherein this court affirmed an attorney fee award of $12,500 as reasonable, based only

upon an award of nominal damages.

DYS finally got rid of the perpetrator. Grier left but not without a parachute made, if not of gold, then of some comforting fabric. And this was not before Griffith was forced into therapy and some months of leave for a stress-related workers compensation claim, after which she had to struggle with DYS to be made financially whole. App. at pp. 73–75.

*Id.* at p. 10.

The district court found and the record reflects that in addition to the immediate suspension imposed on Grier, DYS paid Griffith her full wages for four months while she was on administrative leave and that DYS also paid her therapy bills and provided her with worker's compensation benefits to cover her job-related stress. Furthermore, after Griffith utilized DYS's grievance procedure, Grier was promptly suspended.

■ The employer is not always liable for sexual harassment committed by its supervisors, *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), but may be liable under agency principles set forth in *Hirschfeld v. New Mexico Corrections Department,* 916 F.2d 572, 576–79 (10th Cir.1990), where the court held that the employer may be liable for sexual harassment if (1) the harasser acted within the scope of his employment, (2) the employer failed to remedy a hostile work environment brought about by the sexual harassment of which the employer knew or should have known, or (3) the harasser acted under apparent authority from the employer. *See also, Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993); *Summers v. State of Utah,* 927 F.2d 1165, 1170 (10th Cir.1991); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987).

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405.

■ Although the equitable remedy of front pay may be awarded where an employer has created such a hostile work environment that reinstatement is not a reasonable

remedy, *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 956–57 (10th Cir.1980), the record shows that Griffith returned to work with DYS without an atmosphere of hostility. Also, there is no evidence here that DYS had any policy, custom or habit of condoning or permitting sexual harassment to occur in the workplace which might justify injunctive relief. DYS promptly acted to eliminate the sexually-racially hostile work environment when informed of Grier's conduct. Thus, injunctive relief was not justified. In *Estate of Pitre v. Western Electric Co.,* 975 F.2d 700 (10th Cir.1992), we recognized that injunctive relief was proper inasmuch as the evidence demonstrated that the defendant employer had established and maintained over a period of years a continuing sexually (female) discriminatory policy respecting promotions and downgrades of a salaried class.

A search of Griffith's affidavit discloses only possible isolated instances, entirely speculative, that the employer *might* have become aware of: a meeting called by Grier in February of 1990 of his shift workers when Grier used the word "fucking" once, and rumors of possible affairs Grier was having with staff members. Nothing therein can fairly be read to constitute facts which the employer knew or should have known of or which, standing alone, create a hostile work environment. Furthermore, nothing in the statement of Pat Kirk, formerly employed as a diagnostician at the Adams Detention Center, in anywise reflects any information concerning Grier which can fairly invoke DYS liability. In effect, the matters related by Griffith are so isolated, infrequent in terms of total employment service, or so questionable in relation to sexual harassment of Griffith that we agree with the district court that the record contains only conclusory and speculative allegations, none of which meet the *Hirschfeld* test. There is nothing in this record demonstrating that the district court erred in refusing to grant Griffith declaratory, injunctive or other equitable relief.

### III.

■ Griffith argues that the district court erred in granting summary judgment to DYS

on her retaliation, continuing discrimination claim because of unresolved disputed facts.

An examination announcement was issued by DYS in July, 1990, to establish a list of employees eligible for promotion. Griffith took the examination on August 21, 1990, and was ranked twelfth on the October 5, 1990, list with a score of 80. Sa Bell's affidavit asserted that Griffith was not referred for positions from that list because of her rank, score, and availability of BFOQ (bona fide occupational qualification) (male only positions). In Sa Bell's affidavit, she further stated that the October 5, 1990, list expired on October 5, 1991, and that because of a state-wide freeze on state employment "... there have been no promotional nor open competitive announcements for youth Services Counselors since 1990." (Appendix, p. 49).

We agree with DYS that Griffith's argument that DYS must establish the necessity for a BFOQ (male only position) is nothing but a red herring. (Answer Brief of Defendant–Appellee, p. 13). The record is uncontroverted that there were no positions, male only, female only, or gender neutral available for Griffith or any other employee eligible for promotion because of a state-wide freeze on promotions since 1990. Thus, we agree with the district court's conclusion that Griffith has not raised a question of material fact and that she "... points to no specific position or promotion that could form the basis of her retaliation claim." (Appendix, p. 16).

In *Archuleta v. Colorado Dept. of Institutions*, 936 F.2d 483, 486 (10th Cir.1991), we held that a plaintiff alleging that she was retaliated against for filing a prior sex discrimination claim must show, in order to establish a prima facie claim for retaliation, (1) she engaged in a protected opposition to discrimination or participation in a proceeding arising out of the discrimination, (2) adverse action by the employer subsequent to the protected activity, and (3) a causal connection between the employee's activity and the adverse action.

Here, Griffith has failed to point to any adverse action by DYS after she filed her complaint with the EEOC. For the forego-

ing reason, the judgment of the district court is AFFIRMED.