Waunita **HAUG**, Plaintiff,

v.

**CITY OF TOPEKA, EQUIPMENT MANAGEMENT DIVISION,** Defendant.

Civil Action No. 97–2094–DES.

United States District Court, D. Kansas.

July 2, 1998.

Brian C. Fries, Sylvester James, Jr, Kenner & James, P.C., Kansas City, MO, for Waunita Haug, Plaintiff.

Thomas E. Wright, Michael M. Walker, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, Donald S. Lee, Song Ping Lee, Topeka, KS, for City of Topeka Equipment Management Div., Defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This employment discrimination action comes before the court on defendant's Motion for Summary Judgment (Doc. 36). Plaintiff has filed a Memorandum in Opposition to defendant's Motion (Doc. 41). Defendant has filed a Reply (Doc. 43). This case arises out of the following claims: (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"); (2) retaliation for filing discrimination complaints in violation of Title VII; and (3) deprivation of Constitutional rights in violation of 42 U.S.C. § 1983. The court has considered the briefs of counsel, the uncontroverted facts and applicable law, and is now prepared to rule.

### I. FACTS

The following facts are either uncontroverted or, if controverted, construed in a light most favorable to plaintiff as the non-moving party. Immaterial facts and factual averments not properly supported by the record are omitted.

Plaintiff began her employment with defendant City of Topeka on September 24, 1984, in the positions of Senior Clerk and Office Assistant V in the Equipment Management Department ("EMD"). Plaintiff was employed in EMD until moving to the defendant's Health Clinic as a Health Clinic Aid on February 26, 1993. From 1987 through March or April 1991, plaintiff's supervisor was Larry Coffman. Mr. Coffman has been plaintiff's boyfriend for the past ten years. In March or April 1991, Stan Stringer ("Stringer") was placed in the position of Division Head of the EMD. In this capacity, he served as plaintiff's supervisor.

Plaintiff contends that Stan Stringer, from April 1991 through July 1991, mentioned, on more than one occasion, getting together with plaintiff for drinks. Plaintiff did not accept Mr. Stringer's offers and Mr. Stringer made no suggestion that plaintiff's continued employment with the EMD a precondition to her accepting his offer to have a drink.

Beginning in July 3, 1991, and continuing through April 20, 1993, plaintiff drafted a series of handwritten notes recording important events that happened at work involving Mr. Stringer. These notes were drafted contemporaneously with the events portrayed in her notes. According to plaintiff, she kept these notes at the request of other garage employees, including her boyfriend, who were unhappy with Mr. Stringer's management style.

As part of her sexual harassment claim, plaintiff contends that on July 3, 1991, Mr. Stringer confronted her and accused her of wasting time as a result of her using work time to respond to inquiries regarding a personal newspaper advertisement. Mr. Stringer told her she would be terminated if her work phone number was used again in an advertisement. During the same conversation, Mr. Stringer told plaintiff he did not want to hear any complaints or problems, shook his finger at her and told her to sit, shut up and smile. Mr. Stringer also told plaintiff she would be attending computer training. Plaintiff felt she was overqualified for the novice-level computer class and Mr. Stringer responded by informing her that she needed a good attitude for this training.

Plaintiff also believes Mr. Stringer sexually harassed her by blaming her for missing paperwork and suggesting to other employees of defendant that plaintiff had not prepared the paperwork. Plaintiff also contends that Mr. Stringer told dirty jokes and used foul language in the work environment. Plaintiff does not recall what kind of dirty jokes Mr. Stringer told, only that he told the jokes to his mechanics while standing in front of plaintiff's office. Plaintiff cannot recall when Mr. Stringer told the dirty jokes, but believes that he told the dirty jokes "at the most just twice when I was standing there."

Plaintiff does not recall when Mr. Stringer used foul language, and concedes that after she told Mr. Stringer she did not like foul

language, she does not recall whether she heard any further foul language from Mr. Stringer or not. She recalls that she and Mr. Stringer did not talk much while at EMD and thus believes he did not use foul language in her presence after she asked that it be curbed. She also admits to personally using some foul language in the workplace.

By no later than December 1991 plaintiff was aware that a consolidation of defendant's fleet services division was going to occur. As a result of its consolidation process, defendant needed to implement a software system to track inventory. Defendant viewed plaintiff as being instrumental in that process due to her familiarity with the equipment in the EMD. Plaintiff was brought into the consolidation process to enter items of equipment into the new data base and to assist in setting up the data base and getting it running. On one occasion shortly after plaintiff began her data base assignment, Ms. Schlegel approached plaintiff while at the 201 N. Topeka Boulevard site and asked her why she was not making the expected progress. Plaintiff responded that she was too busy performing her daily routine at the EMD to fully attend to her new responsibilities.

On September 10, 1992 plaintiff filed a grievance with the City of Topeka. The basis of plaintiff's grievance was a disagreement with her supervisor Bill Palmer. In her grievance she makes no reference to Stan Stringer sexually harassing her. However, she does reference Mr. Stringer and complains that he "has not implemented rules or guidelines with his employees and Mr. Palmer's beliefs and the rest of our shops procedures may not correspond."

On September 11, 1992, plaintiff was notified by Bob Collier via memorandum that her work location was to be changed from the EMD garage at 201 N. Topeka Boulevard to 515 Kansas Avenue. The same memorandum advised plaintiff that Stan Stringer was no longer going to be her supervisor and her new supervisor would be Deanna Schlegel. Plaintiff was upset when she was moved to 515 Kansas Avenue from the 201 N. Topeka Boulevard site. Plaintiff stated she liked working at the 201 N. Topeka Boulevard garage and wanted to stay at that location.

On October 22, 1992, plaintiff filed a second grievance with the City of Topeka. This grievance arose from her move to the 515 Kansas location. In her grievance, plaintiff alleges the move was done in retaliation for some conduct for which a reprimand was issued to her by her supervisor, Bill Palmer. What this conduct entailed is unclear from the record. In her October 22, 1992, grievance plaintiff concluded "Although I have been sexually harassed and discriminated against by my division head, Stan Stringer, I must conclude the actual move occurred due to retaliation [by Bill Palmer], especially since no real reason has been given for my sudden move." Prior to her October 22, 1992, grievance, plaintiff had not put anything in writing regarding Mr. Stringer's alleged sexual harassment towards her.

After plaintiff began working at the 515 Kansas Avenue location in September 1992, she sought employment in other areas of the city including the Health Department. On January 14, 1993, plaintiff interviewed at the Health Department for a vacant position. On February 24, 1993, plaintiff was again interviewed at the Health Department. On February 26, 1993, plaintiff entered into her diary that "Doty called and I decided to take job with Nola" at the Health Department. After plaintiff left fleet services and moved to the defendant's Health Clinic in February 1993, plaintiff received the same pay and benefits which she received as an Office Assistant V in the Equipment Management Division, and she still worked the same day shift. As an employee of the Health Clinic she was on full-time, permanent status.

Plaintiff filed a charge of discrimination with the Topeka Human Rights Commission on January 22, 1993. In her charge, she contended she had been discriminated against on account of her sex and was sexually harassed by Stan Stringer. Plaintiff filed a charge of discrimination before the Kansas Human Rights Commission on March 25, 1993. In her charge of discrimination, plaintiff alleged she was discriminated against on account of her gender and that she was retaliated against for complaining about gender based discrimination.

Plaintiff resigned her position with the City of Topeka on August 13, 1996, after working for the City approximately three years from the date she left Stan Stringer's supervision.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judg-

ment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Application of Statutory Time Limit

42 U.S.C. § 2000e–5(e) provides that a discrimination charge must be filed within 300 days after the alleged unlawful conduct occurs. This filing is a prerequisite to a civil suit under Title VII. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Defendant contends that many of plaintiff's allegations are time-barred because they occurred more than 300 days before plaintiff filed her charges with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") on March 25, 1993. Plaintiff concedes that many of the alleged acts of harassment occurred outside the time limit imposed by Title VII, but alleges several incidents which clearly occurred within the 300–day time frame. Plaintiff contends that these incidents, when viewed together with those incidents that occurred outside the time limitation, represent a continuing pattern of discrimination.

■ The Tenth Circuit recognized the continuing course of conduct doctrine in the context of a gender discrimination claim in *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 984 (10th Cir.1991). That doctrine provides that a discrimination claim may include challenges to conduct which occurred outside the applicable limitations period of Title VII if the various acts constitute a "continuing pattern of discrimination." *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir.1987). This requires that there "be at least one instance of the discriminatory practice within the filing period for the doctrine to apply, and the earlier acts must be part of a continuing policy or practice that includes the act or acts within the statutory period." *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir.1993) (quoting *Furr*, 824 F.2d at 1543). "It is not sufficient merely that acts outside the required time limit had a continuing effect within the statutory time allowed for suit." *Martin*, 3 F.3d at 1415.

■ For determining whether specific and related discriminatory acts amount to a discriminatory practice, the Tenth Circuit has adopted the approach taken by the Fifth Circuit in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983). *Martin*, 3 F.3d at 1415. That approach requires the court to consider several nonexclusive factors relevant to the continuing violation question. The first factor is subject matter. Do the alleged violations constitute the same type of discrimination? The second factor is frequency. Were the alleged violations isolated and infrequent or recurring? The third factor is permanence. Was the nature of the alleged violations such that it should trigger an employee's awareness of the need to assert her rights and would the consequences of the act continue in the absence of a continuing intent to discriminate? *Id.*

■ Examining plaintiff's allegations in light of the factors set out in *Berry*, the court concludes that plaintiff presents insufficient facts to raise a triable issue on whether defendant engaged in a continuing course of discrimination such that incidents that occurred prior to the 300–day time limitation should be considered in the court's analysis of plaintiff's sexual harassment claim. First,

few of the alleged incidents involved sexual harassment. For example, plaintiff alleges that Stringer asked her to meet him for drinks; admonished her for using defendant's telephone number in a personal classified advertisement; told her to sit down, shut up and smile; told her he did not want to hear any further complaints about being sent to a novice-level computer class; chastised her for using overtime; directed her to draft reports for other supervisors; and blocked her exit from a room in which he was arguing with another employee. With the possible exception of Stringer's request that plaintiff meet him for drinks, plaintiff presents no evidence that any of these incidents occurred as a result of plaintiff's gender.

■ Moreover, except for the allegations of "yelling and screaming," the incidents alleged to have occurred prior to the 300–day time limitation were not continuous in nature, but rather unrelated incidents thinly spread over an eighteen month period of employment. Finally, it is uncontroverted that plaintiff understood she could have filed a discrimination charge as early as July 3, 1991, after speaking with members of the Topeka Civil Rights Commission about Stringer's attempts to meet her for drinks. If a defendant's conduct should have alerted a reasonable person to act to assert her rights at the time of the violation, the victim generally cannot later rely on the continuing violation doctrine to overcome the statutory time limitation. *See Martin*, 3 F.3d at 1415. In this case, plaintiff admits to being aware of her right to file a discrimination charge as early as July 3, 1991. Accordingly, the court will not consider evidence of incidents that occurred prior to the 300–day statutory time limitation in its analysis of plaintiff's sexual harassment claim. The court must now determine whether the incidents alleged, excluding those occurring outside of the limitations period, are sufficient to establish a case of sexual harassment under the hostile work environment theory.

### B. Sexual Harassment—Hostile Work Environment

Title VII prohibits sexual harassment in the workplace. *Meritor Savings Bank v.*

*Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Sexual harassment under Title VII may be shown under either of two principal theories: quid pro quo discrimination or hostile work environment. *Id.* at 65–66, 106 S.Ct. 2399. Plaintiff has made no quid pro quo claim that sexual favors were coerced in exchange for employment benefits. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987). Rather, she charges that discrimination based on sex created a hostile or abusive work environment.

A hostile work environment exists when a plaintiff is subjected to sexual harassment "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399 (citation omitted). Sexual harassment is behavior "'that would not occur but for the sex of the employee' .... 'If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination.'" *Gross v. Burggraf Construction Co.,* 53 F.3d 1531, 1537 (10th Cir.1995) (citations omitted).

In *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court stated:

> Conduct that is not severe or pervasive enough to create an objectively hostile environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

This court, therefore, must determine whether a reasonable jury, considering the admissible evidence as presented by plaintiff in opposition to defendant's motion for summary judgment, could find that the alleged conduct was: 1) gender based or stemmed from sexual animus; and 2) pervasive or severe enough to objectively alter the terms, conditions or privilege of employment. *Gross,* 53 F.3d at 1539 (citations omitted). This determination must be made "in light of 'the record as a whole' and 'the totality of [the] circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" *Id.* at 1537

(quoting *Meritor,* 477 U.S. at 69, 106 S.Ct. 2399).

In opposition to defendant's summary judgment motion, plaintiff presents evidence of conduct which she contends establishes the existence of a hostile work environment. The court will first determine whether there is sufficient evidence for a finder of fact to conclude that any of the conduct complained of resulted from gender bias or sexual animus. If so, the court will then determine whether there is sufficient evidence for a finder of fact to conclude that the conduct was severe or pervasive enough to objectively alter the terms, conditions or privilege of plaintiff's employment with the City of Topeka.

 Plaintiff opposes defendant's summary judgment motion by offering evidence of Stan Stringer's conduct which she contends constitutes sexual harassment. The court notes, however, that much of this evidence provides no support for plaintiff's claim. For example, evidence that people were upset because they believed plaintiff's replacement, Ms. Patterson, jumped several positions, that Ms. Patterson was offended by the "rough" language in the garage area, that few of the employees thought Stringer qualified for his job, or that Stringer was somewhat boisterous has little bearing on plaintiff's hostile work environment claim.

 Similarly, much of the evidence of Stringer's alleged misconduct is unhelpful to plaintiff's claim. Plaintiff offers evidence that Stringer yelled at her, sometimes using foul language like "God Damn" or "bitch;" that Stringer made derogatory comments about her, including referring to her as a "slut" in a conversation with another employee; that Stringer sometimes put his hand on her shoulder when talking to her; and that Stringer told two unspecified "dirty jokes" to male mechanics in front of her office. Plaintiff presents no evidence, however, that Stringer's yelling resulted from sexual animus or gender bias. Indeed, the record reveals abundant evidence that Stringer yelled at both male and female employees indiscriminately and without regard to gender. There is also a noticeable lack of evidence that any of the yelling included

gender-based vulgarity used to characterize, describe, or reference any female employee. While Stringer's conduct in these particular situations may have been less than professional, the presence of unprofessional or even vulgar conduct, standing alone, does not establish that it resulted from gender bias or sexual animus.

The evidence that Stringer sometimes put his hand on plaintiff's shoulder while talking to her is also unhelpful to plaintiff's claim. Plaintiff again offers no evidence that this conduct resulted from gender bias or sexual animus. Instead, the evidence shows this habit of Stringer's appears to be gender-neutral. Indeed, William Chinn, the employee whose testimony constitutes the only corroborating evidence of this particular conduct, also testified that Stringer sometimes did the same thing while talking with him.

■ With regard to Stringer's use of the terms "bitch" and "slut," the record indicates that instead of actually calling plaintiff a bitch, Stringer, on several occasions, demanded that plaintiff should stop "acting like a bitch." Stringer likewise used the term "slut" in reference to plaintiff and not directly to her. There is also evidence that this term was used by Stringer only after she had been moved from under Stringer's supervision. Nevertheless, drawing all reasonable inferences in plaintiff's favor, the court believes that a reasonable jury could find that Stringer's use of the terms "bitch" and "slut" in reference to plaintiff was gender-based or resulted from sexual animus. Similarly, out of an abundance of caution to plaintiff as the nonmoving party, the court will consider plaintiff's allegations that Stringer told at least two "dirty" jokes as gender-based conduct.

■ The next question is whether defendant's conduct was pervasive or severe enough to objectively alter the terms, conditions or privileges of plaintiff's employment. *See Meritor,* 477 U.S. at 67, 106 S.Ct. 2399. The Supreme Court said this standard is the middle ground between one that makes merely offensive conduct actionable and a standard that requires a psychological injury. *Harris,* 510 U.S. at 22, 114 S.Ct. 367. A "mere utterance of an … epithet which engenders offensive feelings in an employee,"

*Meritor,* 477 U.S. at 67, 106 S.Ct. 2399, "does not impact a condition of employment and, therefore, does not implicate Title VII." *Harris,* 510 U.S. at 21, 114 S.Ct. 367. On the other hand, Title VII becomes an issue before the employee suffers a nervous breakdown. *Id.* at 22, 114 S.Ct. 367. Circumstances to consider in each case include: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* "[A]any relevant factor may be taken into account, [but] no single factor is required." *Id.* at 23, 114 S.Ct. 367. Only that conduct which the court has found to be discriminatory, i.e., resulting from gender bias or sexual animus, will be considered at this stage of the inquiry. *See Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994) ("General harassment if not racial or sexual is not actionable.").

"The *Meritor* test is a disjunctive one, requiring that the harassing conduct be sufficiently pervasive or sufficiently severe to alter the terms, conditions, or privileges of Plaintiff's employment." *Smith v. Norwest Financial Acceptance, Inc.,* 129 F.3d 1408 (10th Cir.1997). The court addresses the severity of the harassing conduct in this case first. "Plaintiff must demonstrate that the harassment is severe under both the subjective and objective requirements of *Harris.*" *Smith,* 129 F.3d at 1413. The court finds, for purposes of the present matter only, that plaintiff has established she subjectively believed defendant's conduct was so severe that it created an abusive or hostile environment.

Next, plaintiff must establish that defendant's conduct was sufficiently severe or pervasive from an objective viewpoint for a reasonable jury to find the work environment hostile or abusive. In this case, the record contains evidence that Stringer, on several occasions, demanded that plaintiff should stop "acting like a bitch" and twice referred to plaintiff using the term "slut." The record also contains evidence that Stringer told at least two unspecified vulgar jokes to some male mechanics within earshot of plaintiff. The court is not convinced, however, that a

reasonable jury, considering all of the circumstances of this case, could find defendant's conduct sufficiently severe to have created a hostile or abusive work environment. None of Stringer's conduct was physically threatening and, except for several requests for a date which are barred from consideration by the 300–day limitation period, plaintiff does not allege any unwelcome sexual advances or inquiries into her personal sexual preferences or practices. Nor does plaintiff allege that Stringer engaged in any sexually suggestive touching or groping with her or any other female employee.

Those cases in which the Tenth Circuit has found conduct severe enough to have altered the conditions of employment involved behavior far more serious than the type of conduct involved here. For example, in *Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996 (10th Cir. 1996), offensive conduct included a salesman pushing the plaintiff against a wall, placing his knee between her legs, and stating "if you ever, you f'ing bitch, talk to my clients again I'll fix you," and calling the plaintiff a "whore," "floor whore," "curb whore," "curb side cunt," and "bitch," on a consistent basis. In *Smith v. Norwest Financial Acceptance, Inc.*, 129 F.3d 1408 (10th Cir.1997), the offensive conduct included statements to the plaintiff by her supervisor to "get a little this weekend" so she would "come back in a better mood," that plaintiff "would be the worst piece of ass that [he] ever had," that the plaintiff "must be a sad piece of ass" who "can't keep a man." Likewise, the offensive conduct in *Hirase–Doi v. U.S. West Communications, Inc.*, 61 F.3d 777 (10th Cir.1995), included verbal and written sexually offensive remarks propositioning the plaintiff and attempts to touch her breast, grabbing her between her legs, and approaching and flirting with numerous other female employees. In contrast to the behavior of the defendants in these cases, Stringer's behavior, though sometimes unprofessional and possibly even offensive, falls far short of the same level of severity. Plaintiff's attempt to distinguish these cases by pointing out Stringer's relationship with the mayor and his status as a "high ranking government official" is not persuasive considering Stringer's relatively mild misconduct. The court finds that plaintiff has failed to establish a triable issue regarding whether defendant's conduct was sufficiently severe to alter the conditions of her employment and create an abusive work environment.

The next question is whether plaintiff has presented evidence that Stringer's conduct was sufficiently pervasive for a reasonable fact-finder to conclude that it created an abusive or hostile work environment. The court finds that she has not. Although the record before the court contains numerous allegations of sexual harassment, most of them either are not supported by competent evidence or lack the support of any evidence tending to suggest the possibility that they resulted from gender bias or sexual animus. Once these allegations are sifted out, the record contains only a few examples of conduct that could possibly be construed as gender-based by a reasonable fact-finder. Spread over eighteen months of employment, however, these incidents fall far short of rising to the frequency necessary for a conclusion that the conduct was so pervasive as to alter the terms and conditions of plaintiff's employment.

The court concludes, considering the totality of the circumstances in this case, that a reasonable fact-finder could not find the sexual harassment either severe or pervasive enough to render defendant's work environment hostile or abusive. While the court recognizes that plaintiff's working conditions may have been unpleasant or even occasionally offensive, this is not enough to support a cause of action for gender discrimination. Title VII is not a code of "civility" by which to remedy every unpleasant work environment, but is rather a remedy for those employees subjected to disadvantageous terms and conditions of employment as a result of their gender. *See Oncale v. Sundowner Offshore Services, Inc.*, —— U.S. ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201. In this case, plaintiff's evidence is insufficient to allow a jury to conclude that plaintiff was subjected to disadvantageous terms and conditions of employment to which male employees were not. Accordingly, summary judgment will be granted in defendant's favor with respect to plaintiff's hostile work environment claim.

## C. Plaintiff's Retaliatory Discharge Claim

Plaintiff claims that defendant retaliated against her for engaging in protected activity under Title VII. To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) she subsequently suffered adverse action by the employer; and (3) there was a causal connection between the protected activity and the adverse action. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir.1997); *Archuleta v. Colorado Dep't of Institutions, Division of Youth Services*, 936 F.2d 483, 486 (10th Cir.1991). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982). Once a plaintiff succeeds in establishing a prima facie case of retaliation, the burden shifts to the employer to proffer legitimate, nondiscriminatory reasons for the adverse action. *Berry*, 74 F.3d at 986. If the employer sets forth legitimate nondiscriminatory reasons for the adverse action, the plaintiff must then establish that the defendant's reasons are merely a pretext for retaliation. *Id.* "The overall burden of persuasion remains on the plaintiff." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993).

 Defendant argues that plaintiff fails to establish a prima facie case of retaliation because she provides no evidence of adverse action. As the court noted in *Jeffries v. State of Kansas, Dept. of Social and Rehabilitation Services*, "courts liberally define an adverse employment action." 946 F.Supp. 1556, 1567 (D.Kan.1996) (citing *Berry*, 74 F.3d at 986). " '[A]dverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well.' " *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir.1996) (quoting *Collins v. State of Ill.*, 830 F.2d 692, 703 (7th Cir.1987)). However, the *Jeffries* court noted, while adverse job ac-

tions cover more than measurable losses of salary or benefits, "not everything that makes an employee unhappy is an actionable adverse action." *Smart*, 89 F.3d at 441. To be actionable, the adverse employment action must be "material:"

> "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

*Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996) (quoting *Crady v. Liberty Nat'l Bank & Trust*, 993 F.2d 132, 136 (7th Cir. 1993)).

The *Jeffries* court set out several examples of adverse employment actions, including decisions that have a demonstrable adverse impact on future employment opportunities or performances; demotions, adverse or unjustified evaluations and reports; transfer or reassignment of duties; failure to promote; and unfavorable letters of reference to prospective employers. *Jeffries*, 946 F.Supp. at 1567 (citations omitted). These examples of adverse employment action are consistent with the general notion that " '[a]n adverse action is one that affects the terms, privileges, duration, or conditions of employment.' " *Yerdon v. Henry*, 91 F.3d 370, 378 (2nd Cir.1996) (quoting *Johnson v. Frank*, 828 F.Supp. 1143, 1153 (S.D.N.Y.1993)).

 As evidence of adverse employment action, plaintiff alleges that immediately after complaining to Ms. Schlegel about Stringer's conduct, she was transferred from defendant's Topeka Boulevard job-site to defendant's Kansas Avenue job-site. Her communication with Ms. Schlegel qualifies as protected activity [1], *see Rettiger v. IBP, Inc.*,

---

1. The court is not convinced that, under the circumstances of this case, plaintiff's argument that defendant's alleged failure to expedite an investigation into her claim of sexual harassment constitutes adverse employment action. Like-

wise, the court finds no merit to plaintiff's argument that Stan Stringer's failure to remind plaintiff of a particular meeting constitutes adverse employment action.

980 F.Supp. 1182, 1190 (D.Kan.1997); the transfer constitutes adverse employment action, *see Jeffries,* 946 F.Supp. at 1567; and the proximity of the two events permits an inference of retaliatory motive, *see Burrus,* at 343. Plaintiff has thus established the elements of a prima facie case of retaliation and the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for the adverse action. *Berry,* 74 F.3d at 986. In other words, defendant's burden is to establish facts from which the court may infer a proper reason behind defendant's decision to transfer plaintiff. The primary reason advanced by defendant for transferring plaintiff is that plaintiff was selected to create a database of inventory information to facilitate the then ongoing consolidation of defendant's fleet services. According to defendant, plaintiff was having trouble completing her database assignment because of interference from conflicting duties arising from her former position at defendant's North Topeka location. The purpose of plaintiff's transfer, defendant asserts, was to allow plaintiff to concentrate on completing the inventory database.

The court finds that the explanation advanced by defendant for transferring plaintiff constitutes a legitimate, nondiscriminatory reason for its actions. Accordingly, to survive summary judgment at this point, plaintiff must show there is a genuine dispute of material fact as to whether defendant's proffered reason for the challenged action is pretextual—i.e. unworthy of belief. *See Reynolds v. School District No. 1,* 69 F.3d 1523 (10th Cir.1995).

Plaintiff argues that defendant's proffered reason for the challenged action is pretextual for several reasons. Plaintiff first argues, based on her deposition testimony, that the inventory project for which she was allegedly moved to complete was in fact completed before her transfer and she was given no work to perform after her transfer. Defendant contends that this assertion is belied by plaintiff's contemporaneously drafted notes. The court has reviewed these notes and although they indicate some periods of inactivity during plaintiff's assignment at the Kansas Avenue location, they also reveal that the great majority of her time was spent actively engaged in the inventory process, training, or other tasks.

Plaintiff also attempts to establish pretext by asserting that Ms. Patterson was surprised by her unexpected promotion into plaintiff's former position; that Ms. Patterson's position was characterized by defendant as temporary but lasted until 1995; that neither position was posted; and that plaintiff was moved into a vacant conference room without a telephone or computer. None of these facts, however, tend to show defendant's proffered reason for the challenged action as unworthy of belief, particularly in the absence of any evidence showing Mr. Collier, the person responsible for moving plaintiff, had knowledge of her complaints against Stringer at the time of the transfer.

Viewing the facts in the light most favorable to plaintiff and allowing plaintiff the benefit of all reasonable inferences to be drawn from the evidence, the court finds no genuine issue of material fact remains. The court also finds that the evidence, interpreted in the light most favorable to the plaintiff, could not persuade a reasonable jury that defendant discriminated against plaintiff. Mere conjecture that the employer's explanation is a pretext for intentional discrimination is not enough to overcome a motion for summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). Accordingly, defendant is entitled to judgment on this claim as a matter of law.

**D. Plaintiff's Gender Discrimination Claim**

Defendant seeks summary judgment on plaintiff's claim that defendant violated Title VII by failing to promote her on the basis of her gender. The Tenth Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a framework for analyzing claims under Title VII when no direct evidence of discrimination exists. *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). In order to survive summary judgment, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff has established a

prima facie case, a rebuttable presumption of discriminatory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *E.E.O.C.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

If the defendant employer meets this burden, the presumption of discrimination arising from the prima facie case "simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). " 'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451, *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552 (1996)). The plaintiff may establish pretext by showing " 'that a discriminatory reason more likely motivated the employer or .... that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). *See Randle,* 69 F.3d at 451.

The court must determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones v. Unisys Corp.,* 54 F.3d 624, 632 (10th Cir.1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 798 (10th Cir. 1993)). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Id.* "[T]he Title VII plaintiff at all times bears the 'ultimate burden of persuasion.' "

*St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742 (citations omitted).

To establish a prima facie case of gender discrimination, plaintiff must demonstrate that (1) she belonged to protected class; (2) she applied for a promotion for which she was qualified; (3) she was rejected for that position; and (4) she was treated less favorably than her male counterparts. *See Cole v. Ruidoso Mun. Schools,* 43 F.3d 1373, 1379 (10th Cir.1994). Defendant contends that plaintiff cannot establish a prima facie case because she can present no evidence showing she was treated less favorably than her male counterparts. A review of the record supports defendant's argument. Plaintiff presents no evidence suggesting disparate treatment. Indeed, the person who ultimately received the managerial position desired by plaintiff was also female. The court therefore finds that plaintiff has not made a prima facie showing of gender discrimination and defendant is entitled to judgment on this claim as a matter of law.

### E. Plaintiff's Constructive Discharge Claim

A plaintiff asserting a claim of constructive discharge must produce evidence that the " 'employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.' " *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1154 (10th Cir.1990) (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). " '[P]roof of constructive discharge depends upon whether a reasonable [person] would view the working conditions as intolerable.' " *Id.* (quoting *Derr,* 796 F.2d at 344) (internal quotations omitted). Here, defendant contends that plaintiff's constructive discharge claim must fail because the facts do not show that her working environment was so intolerable as to compel a reasonable person in her position to resign. The court agrees. As noted above, plaintiff fails to present evidence from which a reasonable person could find the incidents of sexual harassment at plaintiff's place of employment either severe or pervasive enough to render the work environment hostile or

abusive. Plaintiff also fails to present evidence apart from incidents of alleged sexual harassment from which a reasonable person could find her working conditions to be intolerable.

The record establishes that plaintiff voluntarily transferred to defendant's Health Clinic in February 1993. She continued to work at the Health Clinic until August 16, 1996, when she voluntarily resigned her position with defendant. During the course of her employment at the Health Clinic, plaintiff's pay increased, she was a permanent full-time employee, her benefits remained unchanged from her previous positions with defendant, and she continued to work a day shift. Without some evidence that her working environment was so intolerable as to compel a reasonable person in her position to resign, the court has no choice but to find that defendant is entitled to judgment on this claim as a matter of law. *See, e.g. Greenberg v. Kmetko,* 840 F.2d 467 (7th Cir.1988) (lateral transfer involving no loss of pay does not constitute constructive discharge or demotion).

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 36) is granted.