Jodi ZISUMBO (fka Didier), Plaintiff,

v.

McLEODUSA
TELECOMMUNICATIONS SERVICES,
INC., Defendant.

No. 2:03–CV–0012–DS.

United States District Court,
D. Utah,
Central Division.

May 11, 2004.

Robert H. Wilde, Reid C. Davis, Robert H. Wilde PC, Midvale, UT, for Plaintiff.

Rebecca A. Winterscheidt, Snell & Wilmer, Phoenix, AZ, Mark O. Morris, Tawni J. Sherman, Snell & Wilmer LLP, Salt Lake City, UT, for Defendant.

## MEMORANDUM DECISION AND ORDER

SAM, Senior District Judge.

### I. INTRODUCTION

Defendant McLeodUSA Telecommunications Services, Inc. moves the court for summary judgment on all of Plaintiff Jodi Zisumbo's claims as more fully discussed below. Briefly stated, the relevant facts and allegations are as follows. Defendant hired Plaintiff on December 16, 1999, as an Account Executive ("AE"). She was later made a Senior Account Executive ("SAE"). Plaintiff's immediate supervisor was Kevin Nelson ("Nelson"). Nelson's supervisor was Drew Peterson ("Peterson"). Both Nelson and Peterson reported to Robert Hatch ("Hatch") who was Group Vice President for Defendant's Western Region.

Plaintiff became pregnant with her fourth child in May of 2000 and so informed Nelson, her immediate supervisor. On July 1, 2000, the number of SAE's on Plaintiff's sales team was reduced from two to one. A male employee, Mark Walker, was selected to remain an SAE on Plaintiff's sales team and Plaintiff was reclassified as an AE with no reduction in base pay. Some of the other employees reassigned by Defendant to AE were male employees. Defendant states that Plaintiff was reclassified as part of a reorganization or readjustment of personnel, primarily involving SAE and AE positions, to meet company expectations. *See* Hatch Aff., Mem. Supp. at Ex. D. After her reclassification, Plaintiff states that she complained to Defendant's Iowa Human Resources Office about Nelson's conduct and her demotion. Plaintiff claims that she never heard about a company reorganization before or after her reassignment. Defendant's Position Statement submitted to the Equal Employment Opportunity Commission ("EEOC") in earlier proceedings states that Plaintiff's reassignment "was based on her inability to understand and complete the 'back-end' part of the sales process". Mem. Opp'n, Ex.5 at 2.

On August 8, 2000, Plaintiff was given a Disciplinary Action Form by Nelson for

being late to work, for having problems making the required number of contacts with sales leads, and for getting into disputes with management. In August of 2000, Plaintiff went on paid medical leave. Plaintiff had a pregnancy-related condition called separated symphysis pubis ("SSP"). Plaintiff asserts that she went on disability because the pain associated with SSP was exacerbated by her hostile work environment. Plaintiff's fourth child was born on January 2, 2001. When Plaintiff was called to return to work, she decided not to continue her employment with Defendant.

Plaintiff subsequently commenced this action. Plaintiff alleges that because of her gender and pregnancy Defendant subjected her to disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. She also claims that Defendant invaded her privacy and defamed her for which it is accountable under state law. Plaintiff's fifth claim purports to allege negligent training and supervision under Title VII.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. See 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727 (2d ed.1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[2] Id., 477 U.S. at

1. Whether a fact is material is determined by looking to relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

2. In his dissent in Celotex, Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 323 (citations omitted).

**1338**

323, 106 S.Ct. 2548. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ....

*Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### III. DISCUSSION

As noted, Plaintiff alleges that because of her gender and pregnancy Defendant subjected her to disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. She also .claims that Defendant invaded her privacy and defamed her for which it is accountable under state law. Plaintiff's fifth claim purports to allege negligent training and supervision in violation of Title VII.

### A. Disparate Treatment—Title VII (Claim I)

■ Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e–2(a)(1). In 1978, Congress added a definitional section to Title VII, known as the Pregnancy Discrimination Act, which provides in part that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." Id. at § 2000e(k). A pregnancy discrimination claim is analyzed the same as other Title VII claims. *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992).

Plaintiff claims that she was discriminated against due to her sex and pregnancy. She complains that she "(1) was subjected to a hostile work environment; (2) was demoted; (3) had commissions withheld; (4) was unfairly disciplined; (5) was denied approximately $1000.00 in short term disability benefits; and (6) was ultimately constructively discharged because of her pregnancy." Mem. Opp'n at 3. Defendant urges that it is entitled to summary judgment because (1) Plaintiff has failed to show an essential element of a

prima facie case, and (2) even if Plaintiff could establish a prima facie case of disparate treatment, Defendant had legitimate non-discriminatory reasons for its actions.

Because Plaintiff has presented no direct evidence of discrimination, the court turns to the familiar burden shifting format set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir.), *cert. denied*, 522 U.S. 1028, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997). A plaintiff first has the burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff meets her initial burden, then the burden of production shifts to the defendant to demonstrate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* Lastly, if the defendant meets its burden, the burden shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's reason for the challenged action is pretextual and unworthy of belief. *Id.* at 804, 93 S.Ct. 1817. *See also E.E.O.C. v. Horison/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir.2000) (a plaintiff can also avoid summary judgment by showing that her protected status, i.e. "pregnancy" was "a determinative factor in the defendant's employment decision").

■■■ To establish a prima facie case of disparate treatment Plaintiff must show: (1) she belonged to the protected class; (2) she was adversely affected by the employer's action; and, (3) she was qualified for the position. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1380 (10th Cir.1994). The fourth element of a prima facie case involves evidence that the adverse employment action was taken "'under circum-

stances which give rise to an inference of unlawful discrimination.'" *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir.2000) (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "A plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways." *Id.* at 1195 n. 6. A plaintiff is not required "to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case." *Id.* However, "evidence that a defendant treated a plaintiff differently than similarly-situated employees is certainly sufficient to establish a prima facie case [and] it is '[e]specially relevant' to show pretext if the defendant proffers a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted).

For purposes of this motion only, the court will assume and find that Plaintiff has met her initial burden of establishing a prima facie case of gender/pregnancy discrimination. Plaintiff belonged to a protected class by being female and pregnant. Arguably she was adversely affected by being demoted and reclassified to AE. Indeed, Plaintiff claims that the reclassification caused her to suffer a reduction in her commissions. It appears to be undisputed that Plaintiff was qualified for the SAE position. Finally, Plaintiff was treated less favorably than her male counterpart, she was demoted in job title while he was not, thus, giving rise to an inference of unlawful discrimination.[3]

■■■ Having found for purposes of the present motion that Plaintiff has met her burden of establishing a prima facie case of discrimination, the court agrees with

---

**3.** Although, Defendant urges that Plaintiff was just one of several male and female SAE's who were moved to AE positions, the record is that on Plaintiff's team, there were only two SAE employees, Plaintiff and her male counterpart.

Defendant that it has met its burden of producing a legitimate nondiscriminatory explanation to rebut any such prima facie case—i.e., that Defendant had a need to reorganize its sales personnel by reducing the number of SAE positions and Plaintiff's male co-worker had better sales figures than Plaintiff and, therefore, was the better qualified person to keep in the SAE position.

■ As noted earlier, when an employer demonstrates a legitimate nondiscriminatory reason for the adverse employment action, the burden shifts to the employee to show that the proffered reason is unworthy of belief or that her protected status was a determinative factor. "A plaintiff establishes pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Horizon CMS/Healthcare Corp.*, 220 F.3d at 1198 (citation omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999), *abrogation on other grounds recognized by Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137 (10th Cir.2003).

■ In urging that Defendant's proffered explanation is a pretext for discrimination, Plaintiff offers the following factual allegations: (1) Nelson made the comment to Plaintiff, "don't go getting pregnant on me"; (2) Nelson's attitude and demeanor changed after Plaintiff informed him she was pregnant; (3) Nelson told Plaintiff her "new nickname was prego"; (4) She was demoted after receiving a better than satisfactory work performance; (5) She was never informed that Defendant was under-

going a reorganization; (6) She never received a copy of Defendant's anti-discrimination manual; (7) She reported Nelson's behavior to Defendant but no investigation or corrective action was taken; (8) In EEOC proceedings Defendant never asserted that she was demoted due to a company reorganization, but rather that she was demoted as a result of poor "back-end" paperwork; (9) Defendant withheld $1000. of Plaintiff's short term disability benefits; and, (10) She was constructively discharged. Mem. Opp'n at 6–14.

Plaintiff has not offered viable evidence sufficient to create a genuine issue of material fact that Defendant's explanation for choosing a male co-worker to retain the SAE position is unworthy of belief or that her gender or pregnancy was a determinative factor. Through the affidavit and deposition testimony of Hatch and Peterson, Defendant has established that those individuals made the decision to reclassify Plaintiff to AE, rather than Walker, because Walker's sales figures were significantly better than Plaintiff's sales figures. There is no evidence before the court that Nelson had a role in that decision. Even though Plaintiff received a satisfactory work performance, which the court notes was while she was pregnant, her reassignment, as noted by Defendant, was based on a corporate readjustment of sales personnel with preference given to the objectively more qualified sales person. The court also agrees with Defendant that at this stage in the dispute after significant discovery, the reason given by Defendant to the EEOC at an earlier stage of discovery is insufficient to draw into question whether Defendant has now advanced a legitimate explanation for the alleged adverse employment action. Similarly, the court agrees with Defendant that the allegation that Plaintiff was unaware of a company-wide personnel readjustment is immaterial and insufficient to draw into

question Defendant's proffered reason for reclassifying her. The court also agrees with Defendant that it is immaterial to the issue of pretext that Defendant failed to provide Plaintiff with its anti-discrimination materials. Plaintiff's assertion that Defendant failed to take action regarding Nelson's alleged conduct is unsupported by any evidence other than Plaintiff's own conclusory allegations. Plaintiff states the Defendant's Human Resource employee, Jennifer Hansen "assured Plaintiff that she would take care of Plaintiff's concerns". Mem. Opp's at 11. Yet, there is simply no evidence before the court of what action, if any, Defendant undertook. Finally, Plaintiff's allegation that Defendant withheld $1000.00 of her short term disability benefits on only one occasion is immaterial and insufficient to draw into question Defendant's proffered explanation for its employment decision. In sum, Plaintiff's allegations, taken individually or as a whole, fail to show that Plaintiff's gender or pregnancy were determinative factors in Defendant's action, nor do they undermine Defendant's articulated reason for reassigning Plaintiff to an AE position.

## B. Hostile Environment—Title VII (Claim II)

■ Plaintiff also claims gender and pregnancy discrimination based on a hostile work environment due to "discriminatory intimidation, ridicule and insult". Compl. At ¶ 52. To survive summary judgment on her hostile environment claim, Plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir.1998), *cert. denied*, 526 U.S. 1039, 119 S.Ct. 1334, 143 L.Ed.2d 498 (1999) (internal quotation marks and citation omitted). "The plaintiff must produce evidence that she was the object of harassment because of her gender." *Id.* "In deciding whether or not a hostile environment existed, it is necessary to look to all the circumstances involved in the situation. These may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'". *Nieto v. Kapoor*, 268 F.3d 1208 1218 (10th Cir.2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Plaintiff acknowledges that in Defendant's motion for summary judgment "Defendant has dispassionately itemized most of the factual allegations that support Plaintiff's claim relating to a sexually hostile work environment." Mem. Opp'n at 15. Those allegations, outlined by Defendant, are as follows.

Summarized, Zisumbo's allegations are that during May, June, July, and the first week of August, 2000, the following discriminatory events took place:

● Nelson said "You are not gonna go and get pregnant now, are you, Jodi?" (Zisumbo Dep. at 37:15–16.)

● Nelson did not say much when Zisumbo told him she was pregnant, which she found very rude. (Zisumbo Dep. at 39:18–25; 40:25–41:1)

● Nelson frequently called Zisumbo "prego" and was "rude" to her. (*Id.* at 44:49–51.)

● Nelson told her that she should quit or go on disability leave. (Zisumbo Dep. at 46:10–48:15.)

● Nelson gave one of Zisumbo's accounts to another AE. (Zisumbo Dep. at 49:21–25.)

- Zisumbo was reassigned from an SAE position to an AE position. (Stmt. Of Facts ¶ 9.)
- Drew Peterson said that he hoped Zisumbo's productivity would not go down because of her pregnancy. (Zisumbo Dep. at 69:7–12; 70:18–72:14.)
- Nelson left Zisumbo a message saying she should keep her cell phone on. (Zisumbo Dep. at 74:24–75:9.)
- When Zisumbo reported to the Farmington office for a meeting, as requested by Nelson, she was told that there was no meeting and Nelson was not there. (*Id.* at 75–76.)
- Zisumbo was moved to the Farmington office, along with the other members of Nelson's team. (Zisumbo Dep. at 89:6–90:17.)
- Nelson told Mark Walker that Zisumbo would sign customers up and then her customers would leave McLeod's service. (Zisumbo Dep. at 106:4–10.)
- Someone at McLeod told one of Zisumbo's customers, Linford Glass, that the problems with Linford Glass' installation was the result of Zisumbo's clerical error. (Zisumbo Dep. at 106:16–109:1.)
- One of Zisumbo's disability checks was allegedly withheld in October 2000. (Zisumbo Dep. at 81:8–84:16.)

Mem. Supp. at 10–11. Plaintiff adds in conclusory fashion that "Defendant's itemization however, does not include the many instances that Plaintiff was yelled at for no reason and the instances instigated by Nelson to pressure Plaintiff to quit her employment." Mem. Opp'n at 15–16. Plaintiff's deposition testimony is similarly conclusory.

 After thoroughly examining the record, the court concludes that a rational jury could not find that the conduct alleged, even if proven true, was so severe or pervasive so as to create an objectively hostile work environment. The court agrees with Defendant that much of the conduct alleged was boorish and rude. Some of the conduct alleged appears from viable evidence to have been motivated by legitimate business reasons. Other conduct alleged merely appears to be isolated incidents. In short, the conduct alleged, in the court's opinion, falls short of the applicable standard to make out a claim under Title VII. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("Title VII does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex'"; "off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"; and, "conduct must be extreme to amount to a change in the terms and conditions of employment").

## C. INVASION OF PRIVACY—FALSE LIGHT (CLAIM III)

In Claim III, Plaintiff alleges that Defendant "intentionally portrayed [her] in a false light to her co-workers, to other employees of the Defendant and an additional number of persons who are as yet unknown." Compl. at ¶ 60. Specifically, Plaintiff points to "Nelson's statement to Mark Walker inferring that Plaintiff was engaging in a dishonest practice by signing customers up just to get a commission and falsely blaming Plaintiff for turn up delays with the Linford Glass account" as well as statements made by Nelson on Plaintiff's Disciplinary Action Form. Mem. Opp'n at 17.

> Utah law provides that
> one is subject to liability to another for invasion of privacy [under a false light theory] if (1) he or she

gives publicity to a matter concerning another that places the other before the public in a false light[; (2)] the false light in which the other was placed would be highly offensive to a reasonable person[;] and [(3)] the actor ha[d] knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Stien v. Marriott Ownership Resorts, Inc.,* 944 P.2d 374, 380 (Utah App.1997) (quoting *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 907 (Utah 1992)).

■■■ The court agrees with Defendant that Plaintiff "has not shown that Nelson's statement to Walker placed her before the public in a false light." Mem. Supp. at 16. *See Shattuck–Owen v. Snowbird Corp.,* 16 P.3d 555, 558 (Utah 2000) (citation omitted) ("public disclosure 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'"). Similarly, the court concludes that alleged statements made by Defendant's employees to Elizabeth Linford of Linford Glass, to the effect that Linford Glass's telephone difficulties were a result of a clerical error made by Plaintiff, did not amount to public disclosure. *See id.* It is worth noting that Elizabeth Linford did not believe Plaintiff to be at fault. Because Plaintiff cannot establish a prima facie claim for invasion of privacy based on a false light theory, Defendant is entitled to summary judgment on Claim III.

## D. DEFAMATION (CLAIM IV)

Plaintiff concedes that her claim for defamation should be dismissed with prejudice. Mem. Opp'n at 18.

## E. NEGLIGENT TRAINING AND SUPERVISION—Tile VII (CLAIM V)

In Claim V Plaintiff purports to assert a claim for negligent training and supervision under Title VII. Plaintiff alleges:

74. Title VII ... obligates employers, including the Defendant to, and without limitation, promulgate clear policies, (a) prohibiting all forms of unlawful discrimination and harassment in the workplace including sexual harassment and discrimination; (b) which invite employees to bring complaints of unlawful discrimination and harassment to the attention of an appropriate supervisor or if necessary to a designated personnel officer of some other official, (c) that allow complaints to be thoroughly but discreetly investigated, and, (d) that provide its management and supervision with detailed training to identify, respond, resolve and otherwise prevent complaints of sexual harassment and discrimination in the workplace.

75. The Defendant breached its duty by failing to provide detailed training and oversight to its employees, supervision and management as outlined herein and, in so doing, proximately caused the Plaintiff to be subjected to unlawful sexual harassment and discrimination in the workplace.

76. In disregard of its duty under Title VII, the Defendant negligently and/or willfully failed to provide detailed training to its managers and other employees in appropriate procedures to protect the Plaintiff from discrimination based on sex and pregnancy and otherwise caused the Plaintiff to be unlawfully singled out, ignored, harassed, demoted, defamed, demeaned and terminated from her employment all to her general damage.

Compl. at ¶¶ 74–76.

■■■ The court agrees with Defendant that "[w]hile the absence of an anti-dis-

crimination policy that contains a complaint mechanism may eliminate a possible defense that would otherwise be available to an employer accused of discrimination, *Cadena v. Pacesetter Corp.,* 224 F.3d 1203 (10th Cir.2000), there is no affirmative requirement that such a policy exist." Mem. Supp. at 18. *See* 42 U.S.C. § 2000e *et seq.*

 In support of her position, Plaintiff relies on *Jeffries v. State of Kansas,* 147 F.3d 1220, 1229 (10th Cir.1998). *Jeffries* presented the issue of whether the employer could be held liable for its employee's actions under a tort-based negligence theory. *Id.* at 1228–29.[4] "Under Title VII, an employer is negligent if it 'fail[s] to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known.'" *Id.* at 1229 (quoting *Hirschfeld v. New Mexico Corrections Dep't,* 916 F.2d 572, 577 (10th Cir.1990)) (internal quotation marks and citation omitted). "In order to prevail on an employer negligence claim, the plaintiff must demonstrate that, once notified of sexual harassment, the employer failed to take 'prompt, adequate and effective remedial action.'" *Jeffries,* 147 F.3d at 1229 (citation omitted).

 Even if Plaintiff's claim could be read as alleging a claim of employer negligence similar to that in *Jeffries,* no viable evidence before the court supports such a claim, i.e. that Defendant, after being notified of sexual harassment failed to take prompt and effective action. Plaintiff, in conclusory fashion, simply states that after she "placed three calls to Defendant's Cedar Rapids human resources department employee Jennifer Hansen", Defendant ignored Nelson's "sexual harassment and discriminatory conduct". Mem. Opp'n at 19–20. Plaintiff, however, acknowledges that Jennifer Hansen "assured Plaintiff that she would take care of Plaintiff's concerns". *Id.* at 11. Other than Plaintiff's conclusory allegation, there is no evidence before the court of what Defendant did or did not do after Plaintiff allegedly complained about Nelson.

## F. CONSTRUCTIVE DISCHARGE

Although not captioned as a separate claim, Plaintiff alleges that on February 26, 2001, she "resigned and/or was constructively discharged from her employment after reasonably concluding that Defendant ignored her complaints of pregnancy discrimination and that she could not return to work and continue being supervised by Nelson and Peterson." Compl. at ¶ 40.

 To prove constructive discharge Plaintiff must provide sufficient facts to demonstrate that "'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 534 (10th Cir.1998) (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). The plaintiff must show that she had no alternative but to quit. *Id.* In the court's view, Plaintiff has failed to meet her required burden.

---

**4.** Under Tenth Circuit case authority, the following are grounds for employer liability for employee conduct.

An employer is liable for: (1) any tort committed by an employee acting within the scope of his or her employment; (2) any tort committed by an employee in which the employer was negligent or reckless; or (3) any tort in which the employee purported to act or speak on behalf of the employer and there was reliance upon apparent authority, or the employee was aided in accomplishing the tort by the existence of agency relation.

*Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 783 (10th Cir.1995).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** and Plaintiff's complaint is **DISMISSED** with prejudice. The Clerk of the Court is requested to enter final judgment for Defendant and against Plaintiff.

**IT IS SO ORDERED.**